# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00486-CV

### City of Carrollton, Appellant

### v.

### Texas Commission on Environmental Quality, Robert D. Balfanz, Truman Clem, Bettye Clem, C.T. Clem, Town of Hebron, Joe Everett, Julie Everett, John O. Grady, Ron Mabra, Willie Mabra, Charles Morris, Randall Morris and Sheri Morris, Appellees

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT NO. GV304727, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## O P I N I O N

The Texas Constitution allows a home rule city to be governed, generally, by ordinances adopted pursuant to its municipal charter. The narrow question presented here is whether a home rule city, such as appellant City of Carrollton, that acquired a Certificate of Convenience and Necessity to provide water and sewer service may revoke or discontinue its water certificate without notice and hearing. Texas Water Code section 13.254(a) allows for revocation of a water certificate after notice and hearing. Tex. Water Code Ann. § 13.254(a) (West 2000). The City of Carrollton sought a declaratory judgment that, because it is a municipal corporation that is not required to obtain a certificate prior to providing water or sewer service, the Texas Commission on

Environmental Quality must grant its petition to cancel its certificate without notice and hearing. The district court denied the requested declaratory judgment.

In four issues, Carrollton appeals, contending that in failing to grant its petition without a notice and hearing the Commission's actions are in violation of (i) the separation of powers doctrine of the Texas Constitution, (ii) the Texas Water Code and Texas Local Government Code, (iii) the powers delegated to the Commission, and (iv) the Commission's own rules. We hold that, once a water certificate is acquired by a home rule city, the Texas Water Code provides the sole mechanism for decertification, and notice and hearing is required. We therefore affirm the judgment of the district court.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1979, Carrollton acquired a certificate covering areas both inside and outside its incorporated limits and including the corporate limits of the neighboring Town of Hebron, all within Dallas and Denton counties. In 1990, the Hebron Water Supply Corporation ("Hebron WSC") obtained a certificate that dually certified it to serve an area located within Hebron that Carrollton's certificate already covered. In 1990, Carrollton requested that the Commission amend Carrollton's certificate to reflect the dual certification caused by the overlapping certificates.

In 1997, Hebron WSC, with the Commission's approval and by agreement with Carrollton, transferred its water system to Carrollton. The Commission cancelled Hebron WSC's certificate and amended Carrollton's to reflect that the area was no longer dually certified and that Carrollton held the only certificate for Hebron WSC's former service area. Thus, Hebron and the boundaries of the former Hebron WSC lie within Carrollton's certificated service area.

2

In September 2001, Carrollton submitted a petition to the Commission to cancel its certificate. Because it is a home rule city and it affirmed its willingness to continue serving existing customers, Carrollton contended that the Commission should ministerially grant its petition. The Commission disagreed, advising the city that it must provide notice—and a hearing, if requested—to its customers pursuant to water code sections 13.250 and 13.254(a). *See id*. §§ 13.250, .254 (West 2000). Carrollton subsequently published notice of its request to cancel, and several Hebron customers filed a protest with the Commission, which was referred to the State Office of Administrative Hearings for a contested case hearing.[1]

Carrollton filed a petition for declaratory judgment. The case was submitted to the district court on an agreed record and with certain factual stipulations. Among the agreed facts were that Carrollton is a "retail public utility" as that term is defined in the water code; Carrollton is a home rule city that has not ceded exclusive original jurisdiction over utility rates, operations, and services within its incorporated limits to the Commission; and Carrollton possesses a water certificate that encompasses portions of the Town of Hebron. The district court denied Carrollton's declaratory relief and rendered judgment in favor of appellees, and this appeal ensued.

---

[1] In October 2004, the administrative law judge issued a proposal for decision recommending that the Commission deny Carrollton's application to cancel its certificate. The Commission agreed with the ALJ and denied the application for cancellation. The merits of the Commission's decision are not before us. For this reason, the underlying facts pertaining to the certificate are also not at issue here. But the Town of Hebron and certain individuals residing in the certificated area are appellees. Because their interests for the purposes of this lawsuit are the same as the Commission's, for convenience we will refer to the Commission or appellees as necessary.

## ANALYSIS

### *The Controversy*

Carrollton contends generally that, because it is a home rule city, the water code provisions and related regulations pertaining to certificates of convenience and necessity do not apply to it. Carrollton specifically contends that once its city council passed a resolution to cancel its certificate, the Commission had no discretion to act other than to grant its petition for decertification. Carrollton urges that the action by the Commission in requiring a notice-and-hearing process is a violation of the constitutional separation of powers and of the statutory and administrative powers of the agency.

Carrollton further contends that its charter and the home rule amendment exempt it from the reach of the water code because the legislature did not extend its provisions to home rule municipalities with "unmistakable clarity." It argues that the home rule amendment specifically exempts it from the provisions of the water code relating to termination of the certificate. *See* Tex. Const. art. XI, § 5. From the general grant of power to home rule cities, Carrollton asserts that "it does not appear"—at least not with unmistakable clarity—that the legislature intended to limit the ability of a municipality to decide where and how to provide utility service. *See Proctor v. Andrews*, 972 S.W.2d 729, 733 (Tex. 1998); *Dallas Merch. & Concessionaires Ass'n v. City of Dallas*, 852 S.W.2d 489, 490-91 (Tex. 1993). The Commission responds that certificates are creatures of statute and part of the comprehensive regulatory system for utilities, and that the water code specifies with unmistakable clarity that they may be cancelled only with notice and hearing.

4

We are therefore asked to square the general grant of power to a home rule city to operate its own water system with the powers granted to the Commission to "establish a comprehensive regulatory system" for retail public utilities for the benefit of consumers and utilities. *See* Tex. Water Code Ann. §§ 13.001, .250, .254 (West 2000).

Because this case involves issues of statutory construction, our review is *de novo. City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). We turn first to the grant of powers to a home rule city.

### Home Rule City

The Texas Constitution authorizes cities exceeding 5000 inhabitants to adopt a home rule charter. Tex. Const. art. XI, § 5. "Adopted in 1912, the home rule amendment 'altered the longstanding practice of having special charters individually granted and amended by the legislature' for the State's larger cities." *Black v. City of Killeen*, 78 S.W.3d 686, 692 (Tex. App.—Austin 2002, pet. denied) (quoting 22 David B. Brooks, Texas Practice: Municipal Law and Practice § 1.17 (2d ed. 1999)). Although home rule cities have a vast amount of power, their authority is not without limitations. Cities adopting a home rule charter have the full power of self government except that

> no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State. . . .

Tex. Const. art. XI, § 5. Thus, home rule cities look to the legislature not for grants of power, but for limitations on their power. *Wilson v. Andrews*, 10 S.W.3d 663, 666 (Tex. 1999) (legislature can "limit or augment" a home rule city's self-governance); *Dallas Merch. & Concessionaires Ass'n*, 852

5

S.W.2d at 490-91; *Forwood v. City of Taylor*, 214 S.W.2d 282, 286 (Tex. 1948) ("The result [of the home rule amendment] is that now it is necessary to look to the acts of the legislature not for grants of power to such cities but only for limitations on their powers."); *Black*, 78 S.W.3d at 692.

Carrollton enacted a home rule charter in 1961. Under the city's home rule charter, it is clear the grant of powers is broad:

> *Section 1.04. Powers.*
>
> The City of Carrollton may exercise all powers that now are or hereafter may be granted to municipalities by the Constitution or the laws of the State of Texas [including] all of the powers conferred upon cities by what is known as the Home Rule Amendment to the Constitution. . . .

As to utilities, the charter provides

> *Section 8.01. Powers of the city.*
>
> In addition to the city's power to buy, own, construct, maintain, and operate utilities, within or without the city limits, and to manufacture and distribute electricity, gas or anything else that may be needed or used by the public, the city shall have further powers as may now or hereafter be granted under the Constitution and laws of the State of Texas.

Carrollton's powers include the use and occupancy of public properties and to require just and reasonable compensation for the use of property, including rights-of-way by public utilities and providers of water services.

The powers included in the charter are consistent with those granted to municipalities by statute. The authority to regulate water and sewer service in a manner consistent with the best interests of its citizens is a power generally granted to municipalities. Texas Local Government

6

Code section 402.001 authorizes a municipality to "purchase, construct, or operate a utility system inside or outside the municipal boundaries and [to] regulate the system in a manner that protects the interests of the municipality." *See* Tex. Loc. Gov't Code Ann. § 402.001(b) (West 1999). It may also "exercise the exclusive right to own, construct, and operate a water system" for its residents. *Id*. § 402.017 (West 1999).

***The Texas Water Code***

*Certificates of Convenience and Necessity*

That the legislature intended certificates of convenience and necessity to be creatures of statute is clear. The general purpose of certification is to provide for a rational distribution of public utility services within defined geographical areas so that, within a specified area, the provider of utility service is "unhampered by competitive forces." *Public Util. Comm'n v. Texland Elec. Co.*, 701 S.W.2d 261, 265 (Tex. App.—Austin 1985, writ ref'd n.r.e.) (quoting Bradley Toben, *Certificates of Convenience and Necessity Under the Texas Public Utility Regulatory Act*, 28 Baylor L. Rev. 1115, 1116 (1976)). The Commission issues a certificate authorizing the holder to provide service to customers within a specified area. Tex. Water Code Ann. § 13.242 (West 2000). The certificate grants the holder a monopoly within its service area. *Id*. Thus, certification is a benefit to its holder because generally no other utility may operate within the area, and the Commission is given authority to issue orders against any provider that transgresses into another's area. *Id*. §§ 13.242(a), .252 (West 2000). The certificate obligates its holder to provide continuous and adequate service to every customer and every qualified applicant within its area. *Id*. § 13.250.

7

Unless otherwise specified, then, no public utility may render service without first obtaining from the Commission a certificate that the present or future public convenience and necessity require or will require the installation, operation, or extension of such services. *Id*. § 13.242(a). The factors the Commission must consider in determining whether to award a certificate are expressions of "legislative standards" guiding the Commission in its administration of the certification process. *Texland Elec. Co.*, 701 S.W.2d at 266. The water code also provides for discontinuation of a certificate: "Unless the commission issues a certificate that neither the present nor future convenience and necessity will be adversely affected," a holder of a certificate may not "discontinue, reduce, or impair" service except for nonpayment or nonuse. Tex. Water Code Ann. § 13.250(b). Thus, certification provides stability and a set of rights to the utility, residents, and customers living within the certificated area.

*Regulatory Framework for "Retail Public Utilities"*

Chapter 13 of the water code was "adopted to protect the public interest inherent in the rates and services of retail public utilities." *Id*. § 13.001(a). It speaks with unmistakable clarity to the comprehensive regulation of these utilities. Finding that retail public utilities are "by definition monopolies in the areas they serve," that "normal forces of competition" do not operate, and that regulation will serve as a "substitute for competition," the legislature passed Chapter 13 of the water code to govern retail public utilities with the stated purpose

> to establish a comprehensive regulatory system that is adequate to the task of regulating retail public utilities to assure rates, operations, and services that are just and reasonable to the consumers and to the retail public utilities.

8

*Id*. § 13.001. Carrollton argues that it is difficult to square the notion that home rule municipalities are charged to regulate their water systems in the best interest of their citizens with the regulatory framework provided by the legislature in the water code and by the Commission in its rules.

It is true that the Texas Local Government Code provides that a home rule municipality may exercise the exclusive right to own, construct, and operate a water system for the use of the municipality and its residents and may take the "necessary action to operate and maintain the system." Tex. Loc. Gov't Code Ann. § 402.017. A home rule municipality may also operate a utility system inside or outside of its municipal boundaries. *Id*. § 402.001. Texas Water Code section 13.042(a) provides for municipal jurisdiction over utilities operating within the municipality's corporate limits:

> Subject to the limitations of this chapter and for the purpose of regulating rates and services so that those rates may be fair, just, and reasonable and the services adequate and efficient, the governing body of each municipality has exclusive original jurisdiction over all water and sewer utility rates, operations, and services provided by a water and sewer utility *within its corporate limits*.

Tex. Water Code Ann. § 13.042 (West 2000) (emphasis added). Citing section 13.042, Carrollton contends that the Commission cannot exert jurisdiction over Carrollton by requiring it to follow the statutory notice and hearing process for cancelling its certificate. *See id*. Section 13.042(b) allows a municipality to cede its jurisdiction over rates, services, and operations to the Commission by ordinance.[2] But these provisions apply only to water and sewer utilities and only when these utilities

---

[2] A city that does not want to be in the water business, even to the extent of regulating a utility operating within its city limits, may turn jurisdiction over that utility to the Commission. Tex. Water Code Ann. § 13.042(b) (West 2000). By stipulation, the parties agree that Carrollton has not

are operating solely within the borders of the municipality. *Id*. Carrollton does not come within the definition of a water and sewer utility and, further, it serves a territory and customers beyond its corporate limits. *See id.* § 13.002(23) (West 2000). By its language, then, section 13.042 does not apply to Carrollton.

The water code distinguishes between utilities and retail public utilities as water service providers. "Utilities" are always required to obtain a certificate before beginning to provide service to an area. *Id*. § 13.242(a).[3] The term "utilities" includes "water and sewer utilities" and "public utilities" and is defined to mean "any person, corporation, cooperative corporation, affected county, or any combination of these persons or entities, *other than a municipal corporation*, water supply or sewer service corporation, or a political subdivision of the state. . . ." *Id*. § 13.002(23) (emphasis added). Thus, municipalities are expressly excluded from the definition.

"Retail public utilities," on the other hand, include municipalities and are not always required to operate with a certificate. *Id*. § 13.002(19) (West 2000). A retail public utility includes "any person, corporation, public utility, water supply or sewer service corporation, *municipality*, political subdivision or agency operating, maintaining, or controlling in this state facilities for providing potable water service or sewer service, or both, for compensation." *Id*. (emphasis added). A "municipality" is defined to include "cities existing, created, or organized under the general, *home-*

ceded its jurisdiction over these matters to the Commission.

[3] Section 13.242(a) provides: ". . . [A] utility, a utility operated by an affected county, or a water supply or sewer service corporation may not in any way render retail water or sewer utility service directly or indirectly to the public without first having obtained from the commission a certificate that the present or future public convenience and necessity will require that installation, operation, or extension. . . ." *Id*. § 13.242(a) (West 2000).

*rule*, or special laws of this state." *Id*. § 13.002(12) (West 2000) (emphasis added). A water system operated by a municipality is a "municipally owned utility." *Id*. § 13.002(13) (West 2000).

As a home-rule city, therefore, Carrollton comes within the definition of a "municipality." Municipalities are expressly included within the Commission's regulatory framework of retail public utilities. And by stipulation, Carrollton agreed that it is a "retail public utility" as that term is defined in the water code.[4] Thus, although Carrollton is a "retail public utility," it is not a "utility" and, therefore, is not subject to the provisions in Chapter 13 that apply to utilities alone. It is, however, subject to the provisions that apply to retail public utilities.

By excluding a municipal utility from the definition of "utility"and including it in the definition of "retail public utility," then, the legislature determined that a municipally owned utility is not always required to have a certificate. As to water service within its borders, a municipality may choose to own its own system and be a retail public utility. If a municipality does not choose to own its system, a utility with a certificate from the Commission authorizing it to serve that geographic area may serve the municipal residents. But a municipality must obtain a certificate when it seeks (i) to render service to an area that is lawfully being served by another retail public utility, *see id*. § 13.242(a), or (ii) to take over service in areas annexed by a city but that are within the certificated area of a water supply corporation, a special utility district, or a fresh water supply district, *see id*. § 13.255(b) (West 2000). Nothing prohibits a municipality from obtaining a certificate when, for example, it serves beyond its boundaries. Whether or not it is required to have a certificate, a retail public utility may request one to enjoy the benefits available to all certificate

---

[4] *See id*. § 13.002(19) (West 2000).

11

holders. But once it determines to seek a certificate, nothing exempts a municipality from the various procedures specified for the issuance and discontinuance of a certificate.

*Issuance and Discontinuance of Certificates*

In the first instance, the water code addresses the issuance of certificates. Certificates are issued only with notice and, if requested, a hearing. Section 13.246 of the water code provides:

> If an application for a certificate of public convenience and necessity is filed, the commission shall cause notice of the application to be given to affected parties and, if requested, . . . a hearing.

*Id*. § 13.246(a) (West 2000). After the Commission receives an application, it ensures that affected parties receive notice and, if requested, a public hearing. *Id*. It evaluates the factors specified by the legislature, including the adequacy of service currently provided to the area, the need for additional service, the effect of granting the certificate on its recipient, as well as the effect on any other retail public utility already offering the same kind of service to the area. *Id*. § 13.246(c) (West 2000). It must also consider the ability of the applicant to provide adequate service, the feasibility of obtaining service from an adjacent retail public utility, and the financial stability of the applicant. *Id*.

Carrollton does not argue that it did not seek and obtain the Commission's approval with notice and hearing when it was granted a certificate. Carrollton applied for and received a certificate in November 1979 "to provide such utility service in accordance with the laws of this State and the Rules of this Commission, subject only to any power and responsibility of this Commission to revoke or amend this Certificate in whole or in part upon a subsequent showing that

12

the public convenience and necessity would be served thereby."[5]  By obtaining this certificate,

Carrollton extended its services to include parts of the Town of Hebron and obligated itself to render

continuous and adequate service to the certificated area.  *See id*. § 13.250(a).  In 1997, when

Carrollton and Hebron WSC negotiated for the sale of Hebron WSC's system and certificate to

Carrollton, Carrollton submitted an application to the Commission, seeking to transfer the certificate

from Hebron WSC to Carrollton.  The Commission approved the transfer "subject to the rules and

orders" of the Commission and specified: "The certificate is valid until amended or revoked by the

Commission."  Thus, Carrollton acquired the certificate subject only to further amendment or

revocation by the Commission.

Carrollton argues that, as a home rule city, it is not required to have a certificate.  It

contends, therefore, that section 13.250 does not apply to it and that, because it acquired its

certificate voluntarily, the Commission must, upon application, ministerially grant the

decertification.  This argument is without merit.  Texas law mandates that "*any retail public utility*

*that possesses* or is required to possess a certificate of public convenience and necessity shall serve

every consumer within [its] certified area and shall render continuous and adequate service . . . ."

*Id*. (emphasis added).  By its clear language, section 13.250 applies to "any retail public utility that

---

[5] The certificate was granted by the Public Utility Commission, which had jurisdiction over water certificates in 1979; jurisdiction over water certification was transferred from the Public Utility Commission to the Texas Water Commission in 1985 and then to the Texas Natural Resources Conservation Commission in 1991, which was renamed the Texas Commission on Environmental Quality in 2001.  *See* Act of May 25, 1985, 69th Leg., R.S., ch. 795, § 3.005, 1985 Tex. Gen. Laws 2719, 2789 (transfer from PUC to TWC); Act of July 25, 1991, 72d Leg., 1st C.S., ch. 3, § 1.058, 1991 Tex. Gen. Laws 4, 20 (transfer from TWC to TNRCC); Act of May 28, 2001, 77th Leg., R.S., ch. 965, § 18.01, 2001 Tex. Gen. Laws 1933, 1985 (renaming of TNRCC to TCEQ).

possesses" a certificate. *Id*. Because Carrollton is a "retail public utility that possesses" a certificate, we conclude that the provisions of the water code for the issuance of certificates apply to it with unmistakable clarity.

By this language, the legislature has demonstrated a clear and unambiguous intent to apply the provisions of section 13.250 to *any holder* of a certificate, regardless of whether the holder is required to possess the certificate or possesses it voluntarily. *See Southwestern Pub. Serv. Co. v. Public Util. Comm'n*, 578 S.W.2d 507, 511 (Tex. Civ. App.—Austin 1979, writ ref'd n.r.e.) (noting that Public Utility Regulatory Act[6] (PURA) reserves "exclusive original jurisdiction" to grant and deny certificates). As a holder of a certificate, then, Carrollton is entitled to the same benefits as any other holder who may be required to possess a certificate: no other water utility may operate within its area, and the Commission is authorized to issue orders against any provider that transgresses a certificate. Tex. Water Code Ann. §§ 13.242(a), .252; *see City of Brownsville v. Public Util. Comm'n*, 616 S.W.2d 402, 408 (Tex. Civ. App.—Texarkana 1981, writ ref'd n.r.e.) (regarding Commission's authority to issue cease and desist order under PURA section 50, predecessor statute to Texas Water Code section 13.242).

Likewise, the discontinuation provision also contemplates its application to any holder of a certificate: "Unless the commission issues a certificate that neither the present nor future convenience and necessity will be adversely affected, *the holder of a certificate* or a person who

---

[6] PURA is the predecessor act to Chapter 13 of the Texas Water Code. Act of May 25, 1985, 69th Leg., R.S., ch. 795, § 3.005, 1985 Tex. Gen. Laws 2719, 2789-2804. In 1985, when jurisdiction over water and sewer utilities was transferred from the Public Utility Commission to the Texas Water Commission, the utility regulations in Chapter 13 of the Water Code were enacted.

14

possesses facilities used to provide service *shall not discontinue, reduce, or impair service* to a certified service area or part of a certified service area. . . .” Tex. Water Code Ann. § 13.250(b) (emphasis added). Although Carrollton’s argument hinges on its contention that it is not required to hold a certificate and that it acquired the certificate voluntarily, the code makes clear that it applies regardless of whether the holder is required or not to possess a certificate.[7] And, section 13.250(d) specifies the terms on which a retail public utility that “has not been granted a certificate” may discontinue service, i.e., “with approval of the regulatory authority.” *Id*. § 13.250(d). It is also consistent with the statutory scheme and the concept of protected service areas that Carrollton follow the same process for decertification as for issuance of certificates.

Section 13.254 of the water code, which goes unmentioned in Carrollton’s brief, speaks directly to the certificate cancellation process for all holders. *Id*. § 13.254. Entitled “Revocation or Amendment of Certificate,” it requires that, once the Commission issues a certificate, it may cancel it *only* after notice and hearing: “The commission at any time *after notice and hearing* may revoke or amend *any* certificate of public convenience and necessity with the written consent of the certificate holder . . . .” *Id*. (emphasis added). The Commission has promulgated regulations implementing this notice-and-hearing requirement. To cancel a certificate, a retail public utility must file a petition to cancel with the Commission and mail notice to its customers and other affected

---

[7] Section 13.243 specifies that a certificate is not required for a retail public utility to extend its services into a contiguous territory, and section 13.246(f) allows for such a utility to apply for a certificate for an uncertificated area on a competitive basis with another retail public utility. Tex. Water Code Ann. §§ 13.243, .246(f) (West 2000). No provision exempts the voluntary holder in these instances from the notice-and-hearing provisions for the issuance and discontinuance of certificates under Chapter 13. *Id*. §§ 13.243, .246(f).

15

parties.[8]   If an affected party requests a hearing, the case is referred to the State Office of Administrative Hearings to conduct a hearing and make a recommendation to the Commission.  The water code does not allow the Commission to cancel unless it determines that neither the present nor future convenience and necessity will be adversely affected.  *Id*. § 13.250(b).  As with the issuance of a certificate, in making its determination to grant or deny decertification, the Commission must consider various factors, including the effect on the customers, the availability of alternate sources of service for the area, and the feasibility of customers obtaining service from alternate providers.  30 Tex. Admin. Code § 291.115(i) (2004).

The legislature may regulate the activities of home rule cities through general statutes when it does so with unmistakable clarity.  It has done so here with its comprehensive regulatory framework and express provisions regarding the issuance and cancellation of certificates, which the Commission has implemented through its rules.  The code provides no other mechanism for the cancellation of certificates.  That this is the sole process contemplated by the legislature for cancelling a certificate is as clear and unmistakable as is the application of the regulatory framework to home rule municipalities.

Even apart from the clear and unmistakable language of the various provisions of the water code, case law confirms that the regulatory provisions concerning retail public utility certificates are applicable to home rule municipalities.  In *City of Brownsville v. Public Utility Commission*, Brownsville, a home rule municipality, argued that it was not subject to the jurisdiction

---

[8]  30 Tex. Admin. Code § 291.115(b) (2004).  The definitions of "retail public utility" and "utility" in Chapter 291, Title 30 of the Texas Administrative Code are identical to the definitions in the water code.  *See id*. § 291.3 (2004).

16

of the Commission under the PURA relating to the extension of service into a certificated area of another retail public utility. 616 S.W.2d at 406-07. The question was the same as that raised here: whether the term "retail public utility" clearly and unmistakably included home rule cities so as to limit their plenary powers.[9] *Id*. at 407. Our sister court concluded that the provision clearly and unmistakably limited the power of the city to extend service to areas being served by other utilities and constituted "a permissible legislative limitation on the otherwise plenary powers of home rule cities." *Id*. As this Court stated in *Public Utility Commission v. South Plains Electric Cooperative*: "[M]unicipally-owned utilities, as retail public utilities, are no different from any other retail public utilities with respect to certificates of public convenience and necessity." 635 S.W.2d 954, 956-57 (Tex. App.—Austin 1982, writ ref'd n.r.e.).

Because Carrollton is a home rule municipality and it passed a resolution to cancel its certificate, it contends that the Commission's determination to subject its "legislative acts to review and adjudication" further violates the constitutional doctrine of separation of powers. Carrollton contends that the Commission must give "appropriate deference" to Carrollton's "legislative act." Even apart from the legislature's clear intent to require every holder of a certificate—whether required to possess one or not—to undergo the notice-and-hearing process, the Commission's conduct does not violate the separation-of-powers doctrine. By its language, Carrollton's resolution merely "ratifies staff actions" in submitting the application to the

---

[9] The statute at issue in *City of Brownsville*, PURA section 50(2), is the predecessor statute to Texas Water Code section 13.242(a). *See* Act of May 25, 1985, 69th Leg., R.S., ch. 795, § 3.005, 1985 Tex. Gen. Laws 2719, 2799.

Commission "seeking to decertify" the certificate, and it authorizes the city attorney to represent Carrollton before the Commission "to continue to represent to [the Commission] that the City no longer wishes to hold [its certificate]." There is no conflict between the processes and procedures mandated by the Commission and the pronouncement of the Carrollton city council.

Moreover, unlike an ordinance, a resolution is not a law, but an expression of an opinion. *See*, *e.g.*, *City of Hutchins v. Prasifka*, 450 S.W.2d 829, 832 (Tex. 1970); *City of San Antonio v. Micklejohn*, 33 S.W. 735, 736 (Tex. 1895). There is no language in the resolution reflecting a legislative act of the council, but rather it appears to be a ratification of prior staff action and an authorization to proceed before the Commission. The resolution does not constitute a legislative act as to invoke the specter of a violation of the separation-of-powers doctrine.

We are persuaded that the legislature clearly and unmistakably intended to apply the cancellation provisions of Chapter 13 to home rule municipalities. The home rule amendment specifically provides that no home rule city "charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State or of the general laws enacted by the Legislature of this State." Tex. Const. art. XI, § 5. We find Carrollton's charter, the home rule amendment, and the Commission's authority to issue and cancel certificates entirely in harmony. While home rule cities generally need not look to the legislature for power to act, the legislature may impose limitations on their ability to act outside their boundaries. With the comprehensive regulatory framework of the water code, it has done so here by granting the Commission the exclusive authority to issue and cancel water certificates.

## CONCLUSION

While we recognize that legislative action is not without bounds and that home rule cities maintain the plenary powers of self government, we conclude that the legislature has spoken with unmistakable clarity in specifying that all holders of water certificates of convenience and necessity are subject to the notice and hearing provisions of the water code for the cancellation of their certificates. For the foregoing reasons, we conclude that the Commission's actions do not violate the separation-of-powers doctrine of the Texas Constitution, the water code or local government code, the powers delegated to the Commission, or its own rules. We overrule the issues presented by the City of Carrollton and affirm the judgment of the district court.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: July 22, 2005