# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00241-CV

**Greater New Braunfels Home Builders Association, David Pfeuffer, Oakwood Estates Development Co., and Larry Koehler, Appellants**

**v.**

**City of New Braunfels, Appellee**

## FROM THE DISTRICT COURT OF COMAL COUNTY, 274TH JUDICIAL DISTRICT NO. C2005-0987C, HONORABLE WELDON KIRK, JUDGE PRESIDING

## O P I N I O N

The Greater New Braunfels Home Builders Association, David Pfeuffer, Oakwood Estates Development Co., and Larry Koehler (collectively, the Developers) appeal a judgment rendered in favor of the City of New Braunfels in a declaratory-judgment action filed by the Developers. The Developers sought (1) declarations to invalidate certain portions of three successive ordinances adopted by the City that imposed fees for stormwater development and connection on all new development and (2) a permanent injunction against the City's enforcement of those portions of the ordinances. The Developers argued that the City failed to follow the statutory requirements of subchapter C of chapter 402 of the Texas Local Government Code when imposing the fees and that the fees are illegal drainage charges, illegal impact fees, and unreasonably discriminatory. After a trial on the merits, the trial court ruled in favor of the City, finding that because the stormwater connection fee "is not intended for use to off-set capital improvements," it is neither an impact fee

under chapter 395 of the local government code nor a drainage charge under chapter 402 of the local government code. The trial court found that the City's adoption of the ordinance imposing the "stormwater connection fee" was authorized under the City's police power as a home-rule municipality. The trial court also found that the complaint concerning the earlier ordinance that imposed a "stormwater development fee" is moot because that ordinance was superseded by the later ordinance imposing the "stormwater connection fee." Because we find that the stormwater connection fee and the stormwater development fee are drainage charges under chapter 402, that the issue concerning the earlier ordinance is not moot, and that the City failed to follow the statutory requirements imposed by that chapter, including publishing notices, holding hearings, assessing the charges against all property owners within the service area, and exempting lots on which no structure exists, we will reverse the trial court's judgment and render judgment declaring that the complained-of portions of the City's ordinances are invalid. We will remand the case for the trial court to reconsider the Developers' request for an award of attorneys' fees.

## BACKGROUND

This case presents the issue of what restrictions, if any, apply to a home-rule municipality once it adopts subchapter C of chapter 402 of the local government code in imposing drainage-related development fees.

### The Statutory Scheme

Before reaching the merits of the Developers' issues, it is helpful to understand the history and structure of subchapter C. Subchapter C was enacted in 1987 and is known as the

2

"Municipal Drainage Utility Systems Act." Tex. Loc. Gov't Code Ann. § 402.041 (West 2005). The legislature found that authority was needed to "permit municipalities to establish a municipal drainage utility system within the established service area; . . . provide rules for the use, operation, and financing of the system; . . . [and] prescribe bases on which a municipal drainage utility system *may be funded and fees in support of the system may be assessed, levied, and collected*." *Id.* § 402.042(a)(1), (2), (5) (West 2005) (emphasis added). Section 402.043 provides that this subchapter applies to "any municipality." *Id.* § 402.043 (West 2005).

Section 402.045 provides that the governing body of a municipality may adopt subchapter C through an ordinance that declares the drainage of the municipality to be a public utility. *Id.* § 402.045(a) (West 2005). Subchapter C places express limitations on the charges that a city can levy to finance the drainage system. Section 402.045 provides that a municipality "will establish a schedule of drainage charges against all real property in the proposed service area." *Id.* § 402.045(b)(1) (West 2005). Section 402.045 also requires that a municipality hold a public hearing before levying drainage charges and that notice be published three times before the hearing. *Id.* § 402.045(c), (d). Section 402.047 identifies the factors on which "the governing body must base its calculations" in setting the charges. *Id.* § 402.047(b) (West 2005).

Subchapter C defines a "drainage charge" to include "the levy imposed to recover the cost of the service of the municipality in furnishing drainage for any benefitted property." *Id.* § 402.044(4)(A) (West 2005). "Cost of service" is broadly defined to include the prorated cost of "the acquisition, construction, repair, and maintenance of structures, equipment, and facilities used in draining the benefitted property; . . . all machinery, equipment, furniture, and facilities necessary

3

or incident to the provision and operation of draining the benefitted property; . . . [and] the administrative costs of a drainage utility system." *Id.* § 402.044(2)(B), (D), (G). "Drainage charge" is also defined to include not just a charge levied to recoup the cost of service, but also a charge to pay for capital improvements—the "funding of future drainage system construction." *Id.* § 402.044(4)(B).

Section 402.053 provides that certain types of property "shall be exempt from the provisions of any rules or ordinances adopted by a municipality pursuant to this Act," including "a subdivided lot, until a structure has been built on the lot and a certificate of occupancy has been issued by the municipality in which the property is located." *Id.* § 402.053(c)(3) (West 2005).

**The City's Adoption of Subchapter C**

Pursuant to the statutory scheme described above, in 2000, the City adopted Ordinance Number 2000-48, which provides,

> [T]he City Council hereby adopts Texas Local Government code Chapter 402, Subchapter C (entitled "Municipal Drainage Utility Systems"); declares the drainage of the city to be a public utility, to be known as the City of New Braunfels Drainage Utility; and dedicates to the drainage utility all city owned property, real and personal, facilities, materials and supplies constituting the city's drainage system . . . .

*Cf. id.* § 402.045(a) ("[T]he governing body of the municipality, by a majority vote of its entire membership, may adopt this subchapter by an ordinance that declares the adoption and that declares the drainage of the municipality to be a public utility."). The 2000 ordinance did not set a schedule of drainage charges, and the City did not levy any drainage charges between 2000 and 2005. During that time, the City paid the costs associated with its drainage system using ad valorem property taxes.

4

In May 2005, the City adopted Ordinance Number 2005-43, which declares that the City adopts subchapter C of chapter 402 of the local government code and that the City's drainage facilities are a public utility. The ordinance states that "the City of New Braunfels, Texas, desires to adopt a drainage development fee consistent with the requirements of Local Government Code Chapter 402."

Under the May 2005 ordinance, an owner of a new development located within 3,000 feet of the City's drainage system must pay a "stormwater development fee," which must be "collected prior to recording a plat in the map and plat records of the County, or prior to a final inspection of a multi-family or non-residential building permit."[1] The ordinance directs that all revenue from the stormwater development fee be placed into a "drainage utility fund," which "shall be used for the purpose of paying the cost of the study, engineering, and design of a stormwater program, and for constructing drainage facilities, and paying the cost of operation, administration, and maintenance of the drainage system of the city."

Pursuant to the May 2005 ordinance, appellant Larry Koehler paid a $1,250 stormwater development fee in order to be able to file the plat for certain residential property that he owned. Koehler testified that he paid the fee involuntarily in order to avoid substantial tax penalties.

On September 15, 2005, the Developers filed a declaratory-judgment action

---

[1] The fee set by the May 2005 ordinance is $1,250 per lot for one-family and two-family residential development, $1,600 per acre for other residential development, $2,600 per acre for nonresidential development with less than 65% impervious cover, and $3,000 per acre for nonresidential development with 65% or more impervious cover.

challenging the validity of the May 2005 ordinance. On October 24, 2005, the City adopted Ordinance Number 2005-76, which expressly superseded the May 2005 ordinance. The October 2005 ordinance, like the 2000 ordinance and the May 2005 ordinance, declares that the City adopts subchapter C of chapter 402 of the local government code and that the City's drainage facilities are a public utility. The October 2005 ordinance uses definitions for its terms that are taken verbatim from subchapter C.

The October 2005 ordinance forces an owner of a new development located within 3,000 feet of the City's drainage system to pay a "stormwater connection fee," rather than the "stormwater development fee" imposed by the May 2005 ordinance.[2] The stormwater connection fee—like its predecessor, the stormwater development fee—must be "collected prior to recording a plat in the map and plat records of the County, or prior to a final inspection of a multi-family or non-residential building permit."

The October 2005 ordinance provides that all revenue from the stormwater connection fee must be paid into the "stormwater connection fee fund," which "shall be used solely for the purpose of paying the cost of the operation, administration and maintenance of the utility drainage system and the cost of operation, repair, and maintenance of publicly owned right-of-ways and easements whether natural or artificial which convey stormwater to the utility drainage system."

On October 26, 2005, the Developers filed an amended petition challenging the

---

[2] The October 2005 ordinance reduced the amount of the fee for one-family and two-family residential development from $1,250 per lot to $600 per lot. Fee amounts for other types of development were unchanged from the May 2005 ordinance imposing the stormwater development fee.

validity of the October 2005 ordinance. On November 28, 2005, the City adopted Ordinance Number 2005-85. The only purpose of the November 2005 ordinance was to change the amount of the stormwater connection fee for certain types of development.[3] On December 2, 2005, the Developers filed their second amended petition challenging the stormwater connection fee imposed by the October 2005 ordinance, as amended by the November 2005 ordinance.

The City acknowledged that its May 2005 ordinance, its October 2005 ordinance, and its November 2005 ordinance did not meet the requirements of subchapter C—the City did not publish the required notices or hold the required hearings before adopting the October 2005 ordinance or the November 2005 ordinance, did not assess the fee on all property owners within the service area, and failed to exempt subdivided lots on which no structure has been built.

A trial on the merits was held on December 13, 2005. That day, the trial court announced its ruling denying the Developers' requests for declaratory and injunctive relief. A final judgment to that effect was signed on January 26, 2006. The trial court signed findings of fact and conclusions of law on March 9, 2006. This appeal followed.

### STANDARD OF REVIEW

All the parties agree that because this case turns on issues of statutory construction, appellate review is de novo. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003).

---

[3] The November 2005 ordinance changed the amount of the fee for all development other than one-family and two-family residential development to $.14 per square foot of impervious cover. The ordinance left the fee amount for one-family and two-family residential development unchanged.

**DISCUSSION**

The Developers raise three issues on appeal—claims that the fees imposed are invalid, that appellant Larry Koehler involuntarily paid a fee, and that the case should be remanded for a reconsideration of their request for attorneys' fees.[4]

**Validity of the Fees**

The crux of the Developers' arguments concerning the validity of the fees is that the fees imposed by the City are invalid because the City chose to adopt subchapter C but failed to comply with the subchapter's requirements for setting drainage fees.

In essence, the Developers argue that the City, having chosen to adopt subchapter C, is bound by all its restrictions and may not pick and choose the provisions with which it wishes to comply. During oral argument, the City conceded that if the fees in question were imposed under the authority of subchapter C, then the City was required to abide by all of subchapter C's provisions. The City undoubtedly conceded this issue because the law is clear—when a home-rule municipality chooses to take advantage of a statutory scheme when it is not required to do so, it is subject to the restrictions imposed by that statutory scheme. *City of Carrollton v. Texas Comm'n on Envtl. Quality*, 170 S.W.3d 204, 212 (Tex. App.—Austin 2005, no pet.); *see also Wilson v. Andrews*, 10 S.W.3d 663, 668 (Tex. 1999); *Hancock v. Rouse*, 437 S.W.2d 1, 3 (Tex. Civ. App.—Houston

---

[4] The list of "Issues Presented" on page two of the Developers' brief does not correspond to the numbered sections in the "Argument" portion of the brief. *See* Tex. R. App. P. 38.1(e) (providing that an "Issues Presented" page should include a concise statement of "all issues or points presented for review"). To avoid confusion, the three "issues" that we refer to in this opinion correspond to the numbered sections of the "Argument" portion of the Developers' brief.

8

[1st Dist.] 1969, no writ).[5]  Here, the City chose to adopt subchapter C, although it was not required to do so.  Thus, it is bound by all the restrictions contained within that subchapter, including those for setting drainage charges.

Therefore, the principal question for this Court to decide is whether the fees imposed under the ordinances in question are in fact "drainage charges" under the subchapter.  The Developers contend that the stormwater development fee and the stormwater connection fee levied by the City fall squarely within the definition of "drainage charges" set forth in subchapter C.  The City, on the other hand, urges that subchapter C and its restrictions on drainage charges are inapplicable to the fees that were imposed pursuant to the May 2005 and October 2005 ordinances.  Instead, the City contends that the fees were imposed pursuant to the City's police power as a home-

---

[5] In *City of Carrollton*, the City argued that because it was a home-rule city that was not required to have a certificate of convenience and necessity to provide water and sewer service, it could revoke the certificate without following the notice and hearing procedures required by the water code.  *City of Carrollton v. Texas Comm'n on Envtl. Quality*, 170 S.W.3d 204, 206 (Tex. App.—Austin 2005, no pet.).  This Court disagreed, holding that "once it determines to seek a certificate, nothing exempts a municipality from the various procedures specified for the issuance and discontinuance of a certificate." *Id.* at 212.

In *Wilson*, the Texas Supreme Court held that Lubbock, a home-rule city that chose to adopt the Civil Service Act to govern its fire and police employees—although it was not required to do so and could opt out—"must adhere to the Act's post-adoption amendments." *Wilson v. Andrews*, 10 S.W.3d 663, 668 (Tex. 1999).  Similarly, in *Hancock*, the court of appeals held, "The Charter of the [home-rule] City of Bellaire provides that all of the powers granted to cities by Arts. 1011a to 1011j, inclusive, Texas Rev.Civ.Statutes, 1925, are adopted and 'made a part of' the charter.  Necessarily the charter also includes the restrictions of the legislative power of the city found in those articles." *Hancock v. Rouse*, 437 S.W.2d 1, 3 (Tex. Civ. App.—Houston [1st Dist.] 1969, no writ).

rule municipality.[6]  We agree with the Developers.

### *Is the October 2005 Ordinance's Stormwater Connection Fee a Drainage Charge Under Subchapter C?*

The trial court found that the stormwater connection fee is not a drainage charge under the subchapter because it "is not intended for use to off-set capital improvements."  However, subchapter C's definition of "drainage charge" is not limited to fees intended for use to offset capital improvements.  Instead, "drainage charge" is defined to include "the levy imposed to recover the cost of the service of the municipality in furnishing drainage for any benefitted property."  Tex. Loc. Gov't Code Ann. § 402.044(4)(A).  "Cost of service," in turn, is defined to include "the prorated cost of the acquisition, construction, *repair*, and *maintenance* of structures, equipment, and facilities used in draining the benefitted property; . . . the prorated cost of all machinery, equipment, furniture, and facilities necessary or incident to the provision and *operation* of draining the benefitted property; . . . [and] the *administrative costs* of a drainage utility system."  *Id.* § 402.044(2)(B), (D), (G) (emphases added).  The City's stormwater connection fee, which is to be paid into a fund that "shall be used solely for the purpose of paying the cost of the *operation*, *administration and maintenance* of the utility drainage system and the cost of *operation*, *repair*, *and maintenance* of publicly owned right-of-ways and easements whether natural or artificial which convey stormwater to the utility drainage system" (emphases added), clearly comes within subchapter C's definition of "drainage charge."

The City argues that the stormwater connection fee—which clearly fits within

---

[6] This argument presents us with the age-old challenge of determining whether something that looks like a duck, quacks like a duck, and walks like a duck is nevertheless a chicken.

subchapter C's definition of "drainage charge" and was imposed through an ordinance that (1) expressly adopts subchapter C; (2) states that "[t]he city may use any remedy stated in Section 402.050, Delinquent Charges, of the Texas Local Government Code"; and (3) takes the definitions of many terms, including "benefitted property," "cost of service," "drainage," "drainage system," and "facilities," directly from subchapter C—is not imposed under the authority of subchapter C, but rather under the City's independent authority as a home-rule municipality. We refuse to accept this argument, and we hold that the stormwater connection fee is a drainage charge under subchapter C of chapter 402 of the Texas Local Government Code.

### *Is the May 2005 Ordinance's Stormwater Development Fee a Drainage Charge?*

The trial court found that the Developers' complaint concerning the May 2005 ordinance is moot because that ordinance was expressly superseded by the October 2005 ordinance. However, appellant Larry Koehler paid a $1,250 stormwater development fee pursuant to the May 2005 ordinance and claims that he did so involuntarily. Thus, although the May 2005 ordinance has been superseded, there exists a live controversy between the Developers and the City concerning the validity of the May 2005 ordinance at the time it was in effect. *See Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642 (Tex. 2005) ("A case becomes moot if a controversy ceases to exist or the parties lack a legally cognizable interest in the outcome."). Therefore, we will address the merits of the Developers' arguments concerning the May 2005 ordinance.

We hold that the May 2005 ordinance's stormwater development fee is also a drainage charge under subchapter C for two reasons.

11

First, the stormwater development fee was imposed by the May 2005 ordinance, which expressly adopted subchapter C and provides that, like the stormwater connection fee, the stormwater development fee shall be used, in part, for "paying the cost of operation, administration, and maintenance of the drainage system of the city." We have explained above why such use makes the fee a drainage charge.

Second, the May 2005 ordinance, unlike the October 2005 ordinance, provides that the stormwater development fee will also be used "for the purpose of paying the cost of the study, engineering, and design of a stormwater program, and for constructing drainage facilities." These uses of the fee are also consistent with its being a drainage charge. Subchapter C defines "cost of service" to include "the prorated cost of the acquisition, *construction*, repair, and maintenance of structures, equipment, and *facilities* used in draining the benefitted property" and "the prorated cost of *architectural*, *engineering*, legal, and related services, plans and specifications, *studies*, surveys, estimates of cost and of revenue, and all other expenses necessary or incident to *planning*, providing, or determining the feasibility and practicability of structures, equipment, and facilities used in draining the benefitted property." Tex. Loc. Gov't Code Ann. § 402.044(2)(B), (C) (emphases added). Therefore, the stormwater development fee comes within subchapter C's definition of a drainage charge.

### *Did the City Fail to Abide by Subchapter C's Requirements?*

Because the City adopted subchapter C and imposed drainage charges under that subchapter, it was bound by the requirements of that subchapter. The City admits that it failed to

comply with many of subchapter C's requirements. The City did not publish the notices or hold the hearings required by section 402.045 before adopting either the October 2005 ordinance or the November 2005 ordinance. *See id.* § 402.045(c), (d). None of the ordinances assesses the drainage charge against all property owners within the drainage utility's service area, as required by section 402.045. *See id.* § 402.045(b)(1). The drainage charge imposed under all the ordinances complained of is assessed against residential lots before a plat is recorded and any development is allowed, in violation of section 402.053, which exempts from all charges under the subchapter "a subdivided lot, until a structure has been built on the lot and a certificate of occupancy has been issued by the municipality in which the property is located." *Id.* § 402.053(c)(3).

Because the City failed to comply with subchapter C's mandatory provisions when imposing the drainage charges, we sustain the Developers' first issue,[7] reverse the trial court's judgment, and render judgment that the portions of the May 2005 ordinance, the October 2005 ordinance, and the November 2005 ordinance imposing the stormwater development fee and the stormwater connection fee are invalid. *See Bolton v. Sparks*, 362 S.W.2d 946, 950 (Tex. 1962) ("Municipal ordinances must conform to the limitations imposed by the superior statutes, and only

---

[7] The Developers also argue in their first issue, in the alternative, that the fees imposed by the City are invalid even without reference to the City's adoption of subchapter C. They urge that subchapter C "creates a comprehensive regulatory scheme" that provides the exclusive methods by which any municipality may finance a drainage utility. The Developers contend that this comprehensive scheme implicitly restricts home-rule municipalities with "unmistakable clarity," prohibiting them from financing drainage utilities through methods that do not comply with the subchapter. The City responds to this argument by asserting that subchapter C does not preempt or limit the authority of a home-rule municipality to levy charges to finance its drainage system. We need not address this issue because of our disposition of the Developers' alternative argument.

13

where the ordinance is consistent with them, and each of them, will it be enforced.").

**Involuntary Payment**

In their second issue, the Developers request that this Court render judgment that appellant Larry Koehler involuntarily paid a stormwater development fee of $1,250 pursuant to the May 2005 ordinance. We decline to address this issue because it was not presented to the trial court. Although the Developers presented evidence suggesting that Koehler paid the fee involuntarily, they did not request a declaration in any pleading to that effect from the trial court.

The trial court's conclusions of law do mention the voluntary-payment rule, but only to state the tautology that "the payment of the Stormwater Development Fee on a voluntary basis does not create liability against the City of New Braunfels under the voluntary payment rule." Based on a review of the pleadings, the Developers limited their requested relief to declaratory and injunctive relief and an award of attorneys' fees. There was no claim for damages as a result of payments made in the past. Nor is there any record that the issue was tried by agreement. Thus, the conclusion pertains to no relevant issue.

The trial court did not expressly conclude that Koehler made his $1,250 payment voluntarily, nor did the trial court so rule by implication because the Developers did not request a declaration to that effect. Generally, a claim must have been asserted in the trial court in order to be raised on appeal. *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993). Accordingly, we decline to address the issue. *See id.*

14

**Attorneys' Fees**

In their third issue, the Developers argue that this Court should remand the case for the trial court to reconsider their request for an award of attorneys' fees. The Uniform Declaratory Judgments Act provides that a court may award court costs and reasonable and necessary attorneys' fees as long as the award is "equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 1997). A court may even award costs and fees to a party who did not prevail. *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 637 (Tex. 1996); *Scottsdale Ins. Co. v. Travis*, 68 S.W.3d 72, 77 (Tex. App.—Dallas 2001, pet. denied). In light of our disposition of the Developers' first issue, in which we rendered judgment granting them declaratory relief that the trial court had denied, the trial court may wish to reconsider the Developers' request for an award of attorneys' fees. We therefore sustain the Developers' third issue, reverse the trial court's ruling regarding attorney's fees, and remand the issue to the trial court for further consideration. *See Neeley v. West Orange-Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746, 799 (Tex. 2006); *Barshop*, 925 S.W.2d at 637–38; *Travis*, 68 S.W.3d at 77.

## CONCLUSION

Because the City imposed drainage charges under subchapter C of chapter 402 of the Texas Local Government Code without complying with the requirements of that subchapter, we reverse the trial court's judgment and render judgment that the portions of the May 2005 ordinance, the October 2005 ordinance, and the November 2005 ordinance imposing the stormwater

15

development fee and the stormwater connection fee are invalid.  Because of this disposition, we remand the case to the district court to reconsider the Developers' request for an award of attorneys' fees.

_____

Diane Henson, Justice

Before Chief Justice Law, Justices Puryear and Henson

Reversed and Rendered in part; Reversed and Remanded in part

Filed:   August 1, 2007

16