**Opinion issued August 29, 2013**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-11-00332-CV

_____

**CITY OF HOUSTON, Appellant**

**V.**

**BCCA APPEAL GROUP, INC., Appellee**

---

**On Appeal from the 269th District Court**
**Harris County, Texas**
**Trial Court Case No. 2008-09399**

---

## MEMORANDUM OPINION

The present dispute requires us to determine the constitutionality of a home-rule city's ordinance which purports to regulate air pollution within that city's

borders. The BCCA[1] Appeal Group, Inc. (the Group), a non-profit organization whose members own and operate industrial facilities in the Houston area, brought suit to enjoin enforcement of two air pollution control ordinances enacted by the City of Houston (the City)—City of Houston Ordinance Nos. 2007-208 and 2008-414 (collectively, the Ordinance). The Group asserts that the Ordinance is preempted by state law. The parties filed cross-motions for summary judgment; the trial court denied the City's motion and granted the Group's motion. We reverse the trial court's judgment and render judgment in favor of the City.

## I. Background

The Group asserts that the Ordinance is preempted because it claims for the City several powers the Legislature granted exclusively to the Texas Commission on Environmental Quality (TCEQ) in the Texas Clean Air Act (TCAA) and the provisions of the Texas Water Code (TWC) that govern enforcement of the TCAA. According to the Group, the Ordinance conflicts with the TCAA, TWC, and Article XI, Section 5 of the Texas Constitution which bars home-rule cities from enacting any ordinance that is "inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State." TEX. CONST. art. XI, § 5(a). With that in mind, we will begin by discussing the relevant portions of the Ordinance, TCAA, and TWC.

---

[1] BCCA stands for "Business Coalition for Clean Air."

2

### a. Texas Clean Air Act and Texas Water Code

In 1967, the Texas Legislature enacted the TCAA which was intended to safeguard the state's air resources without compromising the economic development of the state. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). The TCAA also created an administrative agency which is now known as the TCEQ and granted the agency the authority to promulgate regulations to accomplish the TCAA's goals, namely "to safeguard the state's air resources from pollution by controlling or abating air pollution and emissions of air contaminants, consistent with the protection of public health, general welfare, and physical property, including the esthetic enjoyment of air resources by the public and the maintenance of adequate visibility."[2] TEX. HEALTH & SAFETY CODE ANN. § 382.002(a) (West 2010); *see also Tex. Ass'n of Bus.*, 852 S.W.2d at 443. TCEQ's rules are codified in title 30 of the Administrative Code. Specifically, the TCAA states that TCEQ shall administer the TCAA and accomplish the TCAA's purpose "through the control of air contaminants by all practical and economically

---

[2] The agency that was initially created by the TCAA was the Texas Air Control Board. In 1991, the Texas Air Control Board and Texas Water Commission merged and became the Texas Natural Resources Conservation Commission which was later renamed the TCEQ in 2001. *See City of Carrollton v. Tex. Comm'n on Envtl. Quality*, 170 S.W.3d 204, 213 n.5 (Tex. App.—Austin 2005, no pet.); *United Copper Indus. v. Grissom*, 17 S.W.3d 797, 804 n.5 (Tex. App.—Austin 2000, pet. dism'd).

feasible methods." *See* TEX. HEALTH & SAFETY CODE ANN. § 382.011(b) (West 2010).

The TCAA authorizes TCEQ to issue orders and make determinations as necessary to carry out the TCAA's purposes. TEX. HEALTH & SAFETY CODE ANN. § 382.023(a) (West 2010). If it appears that the TCAA or a TCEQ rule, order, or determination is being violated, TCEQ may, inter alia, "take any other action authorized by [the TCAA] as the facts may warrant." *Id.* § 382.023(b) (West 2010); *see also* 30 TEX. ADMIN. CODE § 70.5 (stating TCEQ may resolve enforcement matters "informally without a contested case proceeding in appropriate circumstances"; stating other remedies available to TCEQ in enforcement actions include, inter alia, "issuance of administrative orders with or without penalties; referrals to the Texas Attorney General's Office for civil judicial action; referrals to the Environmental Protection Agency for civil judicial, or administrative action; referrals for criminal action; or permit, license, registration, or certificate revocation or suspension").

Under the TCAA, TCEQ has the sole authority to authorize air emissions, which includes the authority to issue and enforce permits for sources of air contaminants. *See* TEX. HEALTH & SAFETY CODE ANN. § 382.051 (West 2010) (authorizing TCEQ to issue and administer pre-construction permits, operating permits, special, general and standard permits, and "other permits as necessary");

4

*see also State v. Associated Metals & Minerals Corp.*, 635 S.W.2d 407, 410 (Tex. 1982) (holding that trial court lacked authority to modify air permit since TCEQ's predecessor agency had "sole authority" to grant or deny permits and set emission levels). The TCAA also requires TCEQ to adopt, charge, and collect certain fees associated with its regulatory program. *See*, *e.g.*, TEX. HEALTH & SAFETY CODE ANN. § 382.062(a) (West 2010) (requiring TCEQ to adopt, charge, and collect permit and inspection application fees); *id.* at § 382.0621(a) (West 2010) (requiring TCEQ to adopt, charge, and collect annual operating permit fees).

Although TCEQ has primary responsibility for enforcing the state's environmental laws, *see* TEX. WATER CODE ANN. § 5.012 (West 2008), the TCAA also acknowledges that home-rule cities have an important role to play with respect to air quality regulation in the State. *See* TEX. HEALTH & SAFETY CODE ANN. § 382.113 (West 2010). Subchapter E of the TCAA expressly recognizes that "a municipality has the powers and rights as are otherwise vested by law in the municipality to . . . abate a nuisance; and . . . enact and enforce an ordinance for the control and abatement of air pollution." *Id.* at § 382.113(a). Such ordinances, however, must be "consistent with [the TCAA] and [TCEQ's] rules and orders" and cannot "make unlawful a condition or act approved or authorized under [the TCAA] or [TCEQ's] rules or orders." *Id.* at § 382.113(b).

In addition to the right to enact and enforce its own air-pollution abatement

5

programs, home-rule cities, as well as other local governments, have the right to enforce state-level air-quality rules and regulations. Specifically, the TCAA provides that local governments may enter and inspect property to determine compliance with the TCAA or a TCEQ rule, variance or order, and requires them to share the results of their inspections with TCEQ when requested. *See* TEX. HEALTH & SAFETY CODE ANN. § 382.111 (West 2010). Local governments may also contract with the TCEQ or with one another to accomplish air quality management, inspection, and enforcement functions and local governments may receive a share of the fees that TCEQ collects to fund their local air-quality inspection programs. *See id.* at §§ 382.0622(d), .115(1) (West 2010). Local governments may also make recommendations to the TCEQ and petition the agency for a rulemaking. *Id.* at § 382.112 (West 2010).

Local governments also have the right to sue in civil district court for civil penalties or injunctive relief for violations of the TCAA. TEX. WATER CODE ANN. § 7.351 (West 2008). Any civil suits initiated by a local government under this subchapter of the TWC, however, must be authorized by the local government's governing body and TCEQ must be joined as a party. *Id.* at §§ 7.352, .353 (West 2008). Any civil penalties recovered by the municipality must be shared equally with the state. *Id.* at § 7.107 (West 2008).

In addition to the provision in the TWC authorizing local governments and

6

other parties to enforce the TCAA by civil suits, chapter 7 sets forth additional provisions governing enforcement of the TCAA. *See id.* at §§ 7.001, .0025–.005, .031–.051, .0525–.066, .068–.183, .184–.186, .188–.255, .301, .303–.358 (West 2008), §§ .002, .006, .052, .067, .1831, .187, .256, .320 (West Supp. 2012). Specifically, the TWC states that the TCEQ may enforce the TCAA through a number of methods including, inter alia, assessing administrative penalties, directing corrective action, revoking permits, and requesting the Attorney General's Office to file a civil suit seeking injunctive relief and/or civil penalties. *See id.* at §§ 7.032 (authorizing suits for injunctive relief), 7.051 (authorizing assessment of administrative penalties by TCEQ), 7.073 (authorizing assessment of administrative penalties and order of corrective action), 7.105 (authorizing attorney general to file civil suits seeking civil penalties and/or injunctive relief), & 7.302(a)(4), (b) (authorizing revocation or suspension of permits issued pursuant to TCAA).

### b. City's Air Quality Ordinance

The City enacted an air-quality ordinance in 1992 which, until 2007, only regulated air pollution from facilities that were not already regulated by the State, i.e., sources of emissions not subject to regulation and licensure by the TCEQ. *See generally* HOUS., TEX., CODE OF ORDINANCES, ch. 21, art. VI (2013). Prior to 2007, the City contracted with TCEQ and cooperated with the agency to ensure

7

that sources of emissions located within the City's borders were in compliance with state law by inspecting and referring cases for enforcement action to the TCEQ. *See* TEX. HEALTH & SAFETY CODE ANN. § 382.115(1) (authorizing local governments to enter into cooperative agreements with TCEQ or with one another to provide for performance of air quality management, inspection, and enforcement functions). After fiscal year 2005, however, the City chose not to renew its contractual relationship with the agency.

Instead, in 2007, the City amended the Ordinance and established its own air quality regulatory compliance program, along with a new fee schedule to fund the program. HOUS., TEX., ORDINANCE 2007-208 (Feb. 14, 2007) (amending Chapter 21 of Code of Ordinances). The 2007 amendment expanded the Ordinance's scope to include the regulation of facilities and sources subject to regulation by TCEQ. The Ordinance, as amended in 2007, also made it "unlawful for any person to operate or cause to be operated any facility" inside the City's borders unless the facility was registered with the City. ORD. at § 21-162(a). Under the Ordinance, such City-issued registrations would only be "issued by the health officer" after the facility tendered "the applicable fee." *Id.* at § 21-163. Such violations are punishable by a fine of not less than $250 but not more than $1,000 for first-time offenders (and a fine of not less than $1,000 but not more than $2,000 for repeat offenders)." *Id.* at § 21-162(c). Citations for such violations, "like all city tickets,

8

are enforced in municipal court." *See generally* City's "Draft FAQ About the Changes to the City of Houston Air Pollution Abatement Program and Registration Ordinance."

Prior to 2007, the Ordinance authorized the City's health officers to "carry out a regulatory compliance program to determine whether registered facilities are in compliance with all applicable state and federal air pollution control laws and regulations." HOUS., TEX., ORDINANCE 92-180 § 21-164 (Feb. 2, 1992). Section 21-164 was amended in 2007. Rather than broadly referring to "air pollution control laws and regulations," the City opted to incorporate specific Administrative Code provisions by reference. *See* ORD. 2007-208 § 21-164. Under the version of section 21-164 enacted in 2007, a laundry list of state-level air pollution control laws and regulations implemented by the TCEQ are incorporated "as if written word for word in this section, including appendices and other matters promulgated as part of the state rules." *See id.* at § 21-164(a). Section 21-164, as amended in 2007, further states that such air pollution control laws and regulations are incorporated by reference "as they currently are and as they may be changed from time to time." *See id.* The Ordinance directs the City's health officers to "carry out a regulatory compliance program to determine whether registered facilities are in compliance with all applicable state and federal air pollution control laws and

regulations" and that "[c]ivil, administrative and criminal sanctions imposed by law shall be pursued where violations are determined to exist." *Id.* at § 21-164(b).

The Group filed suit in 2007 asking the trial court to declare the Ordinance unconstitutional and to enjoin the City from enforcing it. While the Group's suit was pending, the City amended the Ordinance in 2008 and made it "an affirmative defense to prosecution [under the Ordinance] . . . that the prosecuted condition or activity has been: (1) Approved or authorized by the [TCAA], state rule or state order; and (2) That the facility is in compliance with any such approval or authorization under the [TCAA], state rule or state order." HOUS., TEX., ORDINANCE 2008-414 § 21-164(d) (May 7, 2008). The 2008 amendments also removed the word "criminal" (without removing the references to prosecution), and capped the fees per location at the highest four fees for the facilities at that location.

### c. Cross-motions for Traditional Summary Judgment

Both the City and the Group filed cross-motions for summary judgment. In its motion, the City argued that it was entitled to summary judgment because the Group did not have standing to bring the declaratory judgment action and, even if the Group did have standing, the Ordinance was a legitimate exercise of the City's

10

police powers.[3]  According to the City, its right to regulate air pollution within its borders was not limited by any state law, and in fact, the Ordinance was consistent with applicable state law and in compliance with the Texas Constitution.

In its motion for summary judgment, the Group argued that it had standing to bring the declaratory judgment action and was entitled to have the Ordinance declared invalid and the City enjoined from enforcing the Ordinance as a matter of law.  The Group argued that the TCAA created a comprehensive regulatory scheme which gave the TCEQ the exclusive authority to issue permits, set emission ceilings, assess fees, and otherwise regulate the state's air quality.  It also set forth in express terms the manner in which local governments, including home-rule cities, could exercise enforcement authority with respect to the regulation of air pollution (e.g., through cooperative agreements with either TCEQ or other local governments, by bringing a civil suit in district court in which TCEQ was named as a necessary party, by enacting and enforcing ordinances for the control and abatement of air pollution that are not inconsistent with the TCAA or TCEQ's rules or orders).

According to the Group, the Ordinance, which created a "duplicative and inconsistent regulatory scheme," was an invalid attempt by the City to usurp

---

[3]  Although the City initially disputed the Group's standing to bring this suit and sought summary judgment on that basis, the trial court held that the Group had organizational standing.  The City is not appealing this portion of the trial court's order.

TCEQ's authority to regulate the state's air quality and was inconsistent with state law. For example, the Group argued that the provisions of the Ordinance requiring facilities to register with, and pay fees to, the City were inconsistent with the TCAA and made illegal conduct that was otherwise legal under state law. The Group further argued that the Ordinance's wholesale incorporation by reference with respect to specific state-level air pollution control laws as set forth in the Administrative Code "as they currently are and as they may be changed from time to time," *see* ORD. § 21-164, constituted an impermissible delegation of the City's authority.

After extensive briefing and argument on the parties' cross-motions for traditional summary judgment, the trial court ruled in an eleven-page order that the Ordinance was an invalid exercise of municipal power because it was inconsistent with state law. The final judgment issued on March 31, 2011, granted the Group's motion for summary judgment, denied the City's motion, declared the Ordinance's registration program, fees, and enforcement procedures to be unenforceable, and enjoined the City from enforcing the Ordinance.

The City is appealing.

## II.    Standard of Review

Traditional summary judgment is proper only when the movant establishes that there is no genuine issue of material fact and the movant is entitled to

judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005). When we review cross-motions for summary judgment, we consider both motions de novo and render the judgment that the trial court should have rendered. *See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007).

We review de novo the trial court's ruling on the validity of an ordinance and we consider all the circumstances and determine as a matter of law whether the legislation is invalidated by a relevant statute or constitutional provision. *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998) (citing *City of Brookside Village v. Comeau*, 633 S.W.2d 790, 793 (Tex. 1982)). In doing so, we presume that the ordinance is valid, and hold the challenging party to its "extraordinary burden" to establish that the ordinance is invalid. *See City of College Station v. Turtle Rock Corp.*, 680 S.W.2d 802, 805 (Tex. 1984); *Comeau*, 633 S.W.2d at 792–93. An ordinance is a valid exercise of a city's police power so long as the regulation was adopted to accomplish a legitimate goal, that is, it must be "substantially related" to the health, safety, or general welfare of the people. *See Turtle Rock Corp.*, 680 S.W.2d at 805.

### a. *Powers of Home Rule Municipality*

Home-rule cities, such as the City, derive their power from article XI, section 5 of the Texas Constitution. *See* TEX. CONST. art. XI, § 5; TEX. LOCAL

GOV'T CODE ANN. § 51.072 (West 2008); *Lower Colorado River Auth. v. City of San Marcos*, 523 S.W.2d 641, 643 (Tex. 1975) (citing *Glass v. Smith*, 244 S.W.2d 645, 649 (Tex. 1951)). Therefore, a home-rule city looks to the Legislature not for grants of authority, but for limitations on their powers. *City of San Marcos*, 523 S.W.2d at 643. The Legislature may limit the power of home-rule cities either expressly or by implication, so long as those limitations appear with "unmistakable clarity." *Id.* at 645 (citing *City of Sweetwater v. Geron*, 380 S.W.2d 550, 552 (Tex. 1964)).

When a home-rule city ordinance appears to be in conflict with a state statute, our duty is to reconcile the two "if any fair and reasonable construction of the apparently conflicting enactments exist[s] and if that construction will leave both enactments in effect." *Int'l Ass'n of Fire Fighters, Local 1173 v. City of Baytown*, 837 S.W.2d 783, 787 (Tex. App.—Houston [1st Dist.] 1992, pet. denied) (citing *City of Beaumont v. Fall*, 116 Tex. 314, 291 S.W. 202, 206 (1927)). If it is not possible to reconcile the two enactments, the state statute trumps the city ordinance. *Dall. Merchant's and Concessionaire's Ass'n v. City of Dall.*, 852 S.W.2d 489, 491 (Tex. 1993) (home-rule city's ordinance that attempts to regulate subject matter preempted by state statute unenforceable to extent it conflicts with statute).

**b.** *Principles of Statutory Construction*

Questions of statutory interpretation are questions of law which we review de novo. *City of DeSoto v. White*, 288 S.W.3d 389, 394 (Tex. 2009). Under the well-settled principles of statutory construction, we begin with the statutory language itself. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Our primary goal is to give effect to the Legislature's intent, and we turn first to the plain meaning of the words and terms chosen. *See id.*; *Owens & Minor, Inc. v. Ansell Healthcare Prods., Inc.*, 251 S.W.3d 481, 483 (Tex. 2008) (citation omitted) ("[I]t is a fair assumption that the Legislature tries to say what it means, and therefore the words it chooses should be the surest guide to legislative intent."). We presume that every word in a statute was chosen by the Legislature for a purpose. *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011).

If the statutory language is clear and unambiguous, we interpret its words according to their plain and common meaning unless that interpretation would lead to absurd results. *Id.* When a statute's language is unambiguous, it is inappropriate to resort to rules of construction or extrinsic aids. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 626 (Tex. 2008); *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865–66 (Tex. 1999). The judiciary's role "is not to second-guess the policy choices that inform our statutes or to weigh the

effectiveness of their results; rather, our task is to interpret those statutes in a manner that effectuates the Legislature's intent." *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 690 (Tex. 2007) (quoting *McIntyre v. Ramirez*, 109 S.W.3d 741, 748 (Tex. 2003)). We use these same rules to construe municipal ordinances. *See Bd. of Adjustment of City of San Antonio v. Wende*, 92 S.W.3d 424, 430 (Tex. 2002).

## III. Analysis

The question before us is whether the TCAA or TWC preempts the City's authority to enact the Ordinance or if, instead, there is a reasonable construction under which both these statutes and the Ordinance remain enforceable.

### a. The City's authority to regulate air pollution or enact air pollution abatement programs is not preempted by state law.

If the Legislature decides to preempt a subject matter normally within a home-rule city's broad police powers (either expressly or by implication), it must do so with "unmistakable clarity." *Dall. Merchant's*, 852 S.W.2d at 491; *see also State v. Chacon*, 273 S.W.3d 375, 378 (Tex. App.—San Antonio 2008, no pet.).

### i. Express Preemption

The Group argues that the TCAA gave the TCEQ the exclusive authority to issue permits, set emission ceilings, assess fees, and otherwise regulate the state's air quality. Neither the TCAA nor the state constitution, however, contains language expressly limiting a home-rule city's power—or granting TCEQ

16

*exclusive* authority—to enact the type of regulations at issue here, i.e., air pollution abatement programs.[4]  On the contrary, the TCAA expressly and unambiguously *acknowledges* the City's right to enact and enforce its own air pollution abatement program, subject to two previously mentioned limitations.  *See* TEX. HEALTH & SAFETY CODE ANN. § 382.113(a)(2), (b) (stating "a municipality has the powers and rights . . . [to] enact and enforce an ordinance for the control and abatement of air pollution, or any other ordinance, not inconsistent with [the TCAA] or [TCEQ's] rules or orders" and does not "make unlawful a condition or act approved or authorized under [the TCAA] or [TCEQ's] rules or orders.")  As such, the TCAA does not expressly preempt the City's power to regulate air pollution within its borders.

### ii.  Preemption By Implication

The lack of an express preemption, however, does not end our analysis.  We must now determine whether the Ordinance is implicitly preempted by state law.  The Group argues that the Legislature can express its intention to preempt local

---

[4]     Had the legislature intended the state to be the *exclusive* regulator of air pollution within the state's borders, it certainly could have done so, and indeed, has done so with respect to other areas of regulation.  *See, e.g.*, TEX. ALCO. BEV. CODE ANN. § 1.06 (West 2007) ("Unless otherwise specifically provided by the terms of this code, the manufacture, sale, distribution, transportation, and possession of alcoholic beverages shall be governed exclusively by this code."); TEX. NAT. RES. CODE ANN. § 133.085(c) (West 2011) ("The provisions [of the Quarry Safety Act] supercede any other municipal ordinance or county regulation that seeks to accomplish the same ends as set out herein.").

regulation with "unmistakable clarity" by implementing a comprehensive regulatory regime that regulates the specific details of a given subject-matter (i.e., by occupying the field of regulation with respect to the subject matter). Although the TCAA is extensive in its scope and there is considerable overlap between the Ordinance and the TCAA, the mere fact that the City is attempting to regulate the same subject-matter as the State does not, in and of itself, mean that the legislature intended to preempt such municipal regulation, much less with "unmistakable clarity." *City of Richardson v. Responsible Dog Owners of Tex.*, 794 S.W.2d 17, 19 (Tex. 1990) (holding home-rule city's comprehensive animal control ordinance not preempted by state penal code provisions governing keeping of vicious dogs, despite "small area of overlap"; stating that "the mere fact that the legislature has enacted a law addressing a subject does not mean that the subject matter is completely preempted"); *see also Brooks v. State*, 226 S.W.3d 607, 610–11 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citation omitted) ("In the absence of express limitations, there is nothing that prevents a city from enacting an ordinance covering the same subject as state or federal regulations.").

Generally, such ordinances are only void if they are inconsistent with state law. *See* TEX. CONST. art. XI, § 5(a) (prohibiting home-rule cities from enacting ordinances that "contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State"). With

18

respect to the TCAA, an ordinance that attempts to regulate the same subject matter as the TCAA is valid so long as it (1) is not inconsistent with the TCAA, the TWC provisions enforcing the TCAA, or TCEQ's rules, regulations, and orders, and (2) does not make unlawful a condition or act approved or authorized under the TCAA, TWC, or TCEQ's rules, regulations, or orders. *See* TEX. HEALTH & SAFETY CODE ANN. § 382.113(b).

### iii. Discussion

The Ordinance requires facilities to register with the City by filing an application and paying the applicable registration fee. *See* ORD. §§ 21-163, -166. It is unlawful to operate a facility within the City's boundaries that is not registered with the City. *See id.* at § 21-162(a). Such violations are punishable by a fine of not less than $250 but not more than $1,000 for first-time offenders (and a fine of not less than $1,000 but not more than $2,000 for repeat offenders). *Id.* at § 21-162(c). The Group argues that these sections are not only inconsistent with state law, but also make unlawful a condition or act approved or authorized under state law.

### 1. Registration (§ 21-163)

The Group argues that a facility's lawful operation pursuant to TCEQ's rules and orders would nonetheless be unlawful under the Ordinance, if that facility failed to register with the City or pay a registration fee. *See* ORD. §§ 21-162

(requiring registration; enforcement provision), 163 (governing issuance of registration), & 166(a) (setting registration fees). Thus, according to the Group, the entire registration program created by the ordinance is preempted. If the Group is correct, then any concurrent regulatory scheme or permitting process by a municipality would be preempted. This does not appear to be the prevailing law in Texas.

Even when the Legislature gives an administrative agency extensive authority to regulate a given subject-matter, a municipal ordinance that establishes a parallel registration, licensing, and/or permitting program is not necessarily preempted. *See Unger v. State*, 629 S.W.2d 811, 812–13 (Tex. App.—Fort Worth 1982, writ ref'd). In *Unger*, the Fort Worth Court of Appeals upheld the authority of a home-rule city acting under its police power to both regulate and prohibit the drilling of oil wells within the city limits, despite the fact that the Legislature had given the Texas Railroad Commission (RRC) broad jurisdiction over all oil and gas wells in Texas and authorized the RRC to, among other things, issue drilling permits for such wells. *See* TEX. NAT. RES. CODE ANN. § 81.051 (a)(2) (West 2011) (granting RRC jurisdiction over all oil and gas wells in Texas); 16 TEX. ADMIN. CODE § 3.5 (requiring RRC-issued drilling permits). The ordinance in question made it unlawful to drill an oil or gas well within the city limits without a city-issued drilling permit. *Unger*, 629 S.W.2d at 812. The court held that the

20

Legislature's delegation of authority to the RRC to regulate the oil and gas business in Texas—which includes the issuance of drilling permits—was not inconsistent with municipal authority to also regulate in that area for its own legitimate purpose.[5] *See id.* at 812–13.

*Unger* is "writ refused" and has the same precedential value as a Texas Supreme Court opinion. Nevertheless, the Group cites to several opinions that pre-date *Unger* for the general proposition that "field-preemption" is one way that the Legislature can express its intention to preempt local regulation with "unmistakable clarity." *See City of Beaumont*, 291 S.W. at 205–06 ("In a word, as long as the state does not, in its Constitution or by general statute, cover any field of the activity of the cities of this state, any given city is at liberty to act for itself."); *Prescott v. City of Borger*, 158 S.W.2d 578, 581 (Tex. Civ. App.—Amarillo 1942, writ ref'd) ("It is well established law in this state that, generally, the governing authorities of cities are prohibited by the Constitution, Art. 11, Sec. 5 . . . from entering a field of legislation that has been occupied by general legislative enactments.").[6] The oil and gas industry in Texas is heavily regulated

---

[5]   The same court upheld a similar ordinance the previous year on different grounds. *See Helton v. City of Burkburnett*, 619 S.W.2d 23, 24 (Tex. App.—Fort Worth 1981, writ ref'd n.r.e.) (rejecting argument that city ordinance which required, inter alia, permit to drill oil and gas well within city limits and assessed $250 permit fee, violated driller's federal 14th Amendment rights).

[6]   The Group also relies upon *City of Brookside Village v. Comeau*, 633 S.W.2d 790, 796 (Tex. 1982) and *City of Carrollton*, 170 S.W.3d at 214—both of which are

and if the Legislature did not preempt the field with respect to the location of oil and gas wells within the state's borders, as it clearly did not, based upon *Unger*,[7] then it certainly did not do so here with "unmistakable clarity."

We note that the Texas Supreme Court recently held that another City ordinance which required concrete-crushing facility operators to obtain a municipal permit in order to operate within the city was preempted. *See S. Crushed Concrete, LLC v. City of Hous.*, 398 S.W.3d 676, 679 (Tex. 2013). That case, however, is distinguishable. In *Southern Crushed Concrete*, the concrete-crushing facility applied for, and was granted, a permit by TCEQ to operate at a given location in the City. *Id.* at 677. The facility then applied to the City for a municipal permit and was denied because the facility's operations would violate the City's newly enacted land-use ordinance which imposed more restrictive

---

factually distinguishable. *City of Carrollton*, which—like the Attorney General's opinions the Group cites—is not binding authority, is also factually distinguishable because the court in that case did not determine the validity of a municipal ordinance, but rather whether the provisions in the Water Code that spoke directly to the certificate cancellation process for *all holders* also applied to a municipality that was also a certificate holder. 170 S.W.3d at 214. *Comeau* is also factually distinguishable. In that case, the Supreme Court concluded that a local ordinance governing the location of mobile homes was not inconsistent with, and therefore, not preempted by, state and federal laws governing mobile home construction, safety, and installation standards. 633 S.W.2d at 795–96. Although the Court stated that the applicable state and federal statutes "preempted the field as to construction, safety, and installation of mobile homes," unlike here, those statutes *expressly prohibited* local governments from adopting different standards.

[7]  *See* TEX. NAT. RES. CODE ANN. § 81.051 (a)(2) (West 2011) (granting Railroad Commission jurisdiction over all oil and gas wells in Texas); 16 TEX. ADMIN. CODE § 3.5 (requiring RRC-issued drilling permits).

locality restrictions than those imposed under the TCAA and TCEQ air quality regulations and rules. *Id.* The Supreme Court rejected the City's argument that the ordinance did not abrogate TCEQ's permit because the ordinance regulated land-use, not air quality, noting that "[i]If the City's contention were true, a city could almost always circumvent section 382.113(b) and vitiate a [TCEQ] permit that it opposes by merely passing an ordinance that purports to regulate something other than air quality." *Id.* at 679. The Court expressly limited its holding to such circumstances by explaining that it was *not* deciding the issue of "whether a city may more restrictively regulate an activity that the State also regulates." *Id.*

Unlike in the *Southern Crushed Concrete* case, the City is not attempting to hold an affected industry to a higher, more onerous standard than the one set forth by the state. On the contrary, the Ordinance is the City's attempt to create a concurrent regulatory scheme or permitting process through which it will enforce the *state's existing* rules and regulations. In fact, the City acknowledges that its decision to regulate and enforce the TCAA and TCEQ rules and regulations on its own in this case—rather than in cooperation with TCEQ—is due to what it perceives to be TCEQ's lax enforcement efforts. According to the City, the Group is only challenging the constitutionality of the Ordinance because the industry "currently enjoys what it perceives to be a permissive regulatory approach from the TCEQ" and it fears regulation by "a vigilant watch dog" (i.e., the City).

23

## 2. Fees and Enforcement (§§ 21-162 and 166)

The Group argues that because the City's duplicative registration program is preempted, the fees associated with it, which are also duplicative, are also invalid.

First, we note that although the TCAA requires TCEQ to adopt, charge, and collect certain fees associated with its permitting process, the statute does not prohibit a municipality that has adopted its own air-pollution abatement program—which the TCAA recognizes it is authorized to do—from also charging and collecting fees to fund the program. *See*, *e.g.*, TEX. HEALTH & SAFETY CODE ANN. §§ 382.062 (requiring TCEQ to adopt, charge, and collect fees for permit and inspection applications), .0621 (requiring TCEQ to adopt, charge, and collect annual operating permit fees), & .113(a) (recognizing municipality's authority to enact its own air-pollution abatement program). Thus, the TCAA does not expressly preempt the imposition of such registration fees.

Second, we note that a home-rule city's authority to enact ordinances under its police power carries with it the corresponding right to impose fees to fund and implement such ordinances; such fees are presumed valid if they are reasonably associated with the cost of administering the ordinance. *See City of Hous. v. Harris Cnty. Outdoor Adver. Assoc.*, 879 S.W.2d 322, 326 (Tex. App.—[14th Dist.] writ denied) (stating statutes or ordinances imposing fees under home-rule city's police power to regulate are prima facie valid and presumed reasonable);

24

*City of Amarillo v. Maddox*, 297 S.W.2d 750, 752 (Tex. Civ. App.—Amarillo 1956, no writ). The Group does not contend that the registration fees imposed under section 21-166 are not reasonably associated with the cost of administering the ordinance. On the contrary, the Ordinance's fee schedule as amended in 2007 and 2008 is consistent with the TCAA's own fee schedule. Compare Tex. Health & Safety Code Ann. § 382.062(d) (West 2010) (authorizing application, permit, and inspection fees of no less than $25 or more than $75,000) with Ord. 2007-208 § 21-166(a) (setting registration fees of $250 to $3,000). *See also* Ord. 2008-414 § 21-166(b) ("Should more than one facility exist on any premises, then the total of all applicable fees shall be payable up to a maximum of the equivalent of a fee for the four facilities with the highest fees.").

Section 21-162's enforcement provision only pertains to violations of the Ordinance (i.e., a facility's failure to register with the City in violation of the Ordinance) and, as such, is not preempted by state law. *See* Ord. § 21-162(a) (stating that it is unlawful to operate facilities within City's boundaries that are not registered with City). Such violations are punishable by a fine of not less than $250 but not more than $1,000 for first-time offenders (and a fine of not less than $1,000 but not more than $2,000 for repeat offenders). *Id.* at § 21-162(c).

### 3. Enforcement and Incorporation of State Law

The Group also challenges the validity of section 21-164 which lists ten

25

sections of the Texas Administrative Code and purports to incorporate them by reference, as if they were written word for word in the Ordinance. *See id.* at § 21-164(a). Section 21-164(c) makes it unlawful to operate any facility not in compliance with any of the TCEQ rules listed in 21-164(a). A violation of section 21-164 is punishable by a fine between $250 and $1,000 for first-time offenders and a fine of between $1,000 and $2,000 for repeat offenders. *Id.* at § 21-164(e). "Each day that any violation under this section continues shall constitute a separate offense." *Id.* at § 21-164(f).

The City argues that since the Ordinance incorporates the enforcement provisions of the TCAA, the Ordinance can only be inconsistent with the TCAA if the TCAA were inconsistent with itself. In other words, an act can only violate section 21-164(a) of the Ordinance if it also violates the TCAA. The Group responds that, unlike the Ordinance, the TCAA and TWC give TCEQ broad discretion when it comes to determining compliance with the TCAA and TCEQ rules and orders. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 382.023–.025, .0216 (West 2010), § .0215 (West Supp. 2012); TEX. WATER CODE ANN. § 5.127. According to the Group, the City's duplicative program—with its wholesale incorporation of only parts of the TCEQ regulatory scheme—would render the TCEQ's discretionary actions and determinations ineffective inside the City's limits, subverting the express goals of the Legislature. However, as the City points

26

out, the Ordinance not only requires the City's health officers to cooperate with county, state, and federal agencies in the enforcement of the state and local laws, but the 2008 amendments to the Ordinance state that it was "an affirmative defense to prosecution [under the Ordinance] . . . that the prosecuted condition or activity has been: (1) Approved or authorized by the [TCAA], state rule or state order; and (2) That the facility is in compliance with any such approval or authorization under the [TCAA], state rule or state order." ORD. § 21-164(d); *see also id.* at §§ 21-146(3),-164(b).

A plain reading of the Ordinance, as amended, demonstrates that it does not subvert the Legislature's goals by rendering the TCEQ's discretionary actions and determinations ineffective inside the City's limits. On the contrary, the City officers charged with enforcing the Ordinance are required to defer to the agency's decisions with respect to the lawfulness of a given air-contaminant emitter's actions. If conduct is not unlawful under state law, as determined by TCEQ, it is not unlawful under the Ordinance.

The Group also argues that the Ordinance impermissibly empowers the City to prosecute air-quality cases criminally, in municipal court, rather than by filing suit in civil district court. Local governments have the right to sue in civil district court for civil penalties or injunctive relief for violations of the TCAA, so long as the TCEQ is joined as a party and an administrative penalty has not been paid to

TCEQ for the violation. TEX. WATER CODE. ANN. §§ 7.068, .351, .353. Any civil penalties recovered by the municipality must be shared equally with the state. *Id.* § 7.107. The Group contends that the Ordinance, which (1) only allows the City to prosecute violations of state law in municipal court under criminal rules rather than in district court under civil rules, as required by TWC section 7.351, (2) does not require joinder of the TCEQ as a "necessary and indispensable party" in its enforcement actions under this section, and (3) does not require the City to share any penalties it recovers with TCEQ, is inconsistent with state law.

The TCAA expressly states that municipalities retain the power to enact *and enforce* their own ordinances to control and abate air pollution. *See* TEX. HEALTH & SAFETY CODE ANN. § 382.113(a)(2). It does not limit where or how the municipality may carry out its enforcement responsibilities. Correspondingly, the TWC "does not exempt a person from complying with or being subject to other law," and, most importantly, its remedies are "cumulative of all other remedies." TEX. WATER CODE ANN. §§ 7.004, .005. Thus, the City has the authority to sue in civil district court for civil penalties or injunctive relief for violations of the TCAA pursuant to the TWC, but it is not prohibited from enforcing its own air-pollution abatement ordinances through other means. *See generally* TEX. LOC. GOV'T CODE ANN. § 54.001(a) (West 2008) ("The governing body of a municipality may enforce each rule, ordinance, or police regulation of the municipality and may

28

punish a violation of a rule, ordinance, or police regulation."); *id.* at § 54.012(1), (2) (West 2008) ("A municipality may bring a civil action for the enforcement of an ordinance . . . for the preservation of public safety . . . [or] relating to the preservation of public health. . . .").

As the party seeking to invalidate the Ordinance, the Group bore the burden of showing that the Legislature intended to preempt the Ordinance with "unmistakable clarity." The TCAA, which expressly acknowledges the City's right to enact and enforce its own air-pollution abatement programs, does not prohibit such cities from bringing air-pollution suits under their own ordinances. Furthermore, although the TWC gives cities the power to enforce state-level air-pollution requirements in civil district court, it expressly states that such remedies are cumulative, and thus it does not prohibit cities from enforcing their ordinances—whether they be in criminal or civil proceedings—in municipal court. As such, neither the TWC nor TCAA appears to preempt the City's power to enforce its own Ordinance which incorporates state law by reference, with "unmistakable clarity."

Invoking the statutory-construction principle of *expressio unius est exclusio alterius*—the mention of one thing impliedly excludes other things of the same type—the Group maintains that the Legislature's delineation of a specific method for local governments to enforce state air-pollution rules and regulations implies its

29

intent to prohibit local governments from enforcing those rules through any other process. This principle, however, is not an inflexible rule, but merely a tool for ascertaining legislative intent. *See Mid–Century Ins. Co. v. Kidd*, 997 S.W.2d 265, 274 (Tex. 1999). More importantly, because the statute is unambiguous, we need not resort to such rules of construction or other extrinsic aids.

### b. The Ordinance's Incorporation of State Agency Rules Does Not Constitute an Impermissible Delegation of City's Power.

Section 21-163(a) lists ten sections of the Administrative Code and states that these "air pollution control laws as they currently are and as they may be changed from time to time, are hereby incorporated as if written word for word in this section, including appendices and other matters promulgated as part of the state rules." *See* ORD. § 21-163.

The Group argues that, even if this section of the Ordinance is not preempted, the Ordinance nevertheless fails because it impermissibly delegates power given to the City under Article XI, Section 5 of the Texas Constitution to TCEQ by incorporating by reference specific rules promulgated by TCEQ and codified in the Administrative Code that implement the TWA and TCAA. *See* ORD. § 21-163(a). The Group argues that such a delegation of legislative power violates the Texas Constitution's separation of powers clause which states:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a

separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

TEX. CONST. art. II, § 1.  The Group argues that the City cannot delegate to any third party—even the TCEQ—the power to make unilateral changes to the City's Code of Ordinances without any action on the part of the city council.  In the seminal "nondelegation doctrine" case, *Texas Boll Weevil Eradication Foundation, Inc. v. Lewellen*, the Texas Supreme Court cautioned that the doctrine "should be used sparingly" and that courts should consider delegations of authority narrowly to uphold their validity whenever possible.  952 S.W.2d 454, 475 (Tex. 1997).

The Group cites to *Desoto Wildwood Development, Inc. v. City of Lewisville*, 184 S.W.3d 814, 826 (Tex. App.—Fort Worth 2006, no pet.) and *Whittington v. City of Austin*, 174 S.W.3d 889, 900 (Tex. App.—Austin 2005, pet. denied) for the general proposition that a city may not delegate the transaction of city business except by resolution or ordinance.  These cases, however, are distinguishable because the courts in both cases were deciding whether statements made by an agent of the city were binding upon the city.  *Desoto Wildwood Dev., Inc.*, 184 S.W.3d at 826 (developer sued city for breach of contract; court held that city attorney's statements in pre-suit letter to developer were not binding on city

31

because there was no evidence that city attorney had been authorized by city council to act for it on this matter); *Whittington*, 174 S.W.3d at 900 (holding city, which could only act through its governing body, failed to meet its summary judgment burden in condemnation case because statements in city's petition and other pleadings were not conclusive proof that city's governing body—as opposed to its attorneys and other agents—determined to condemn property for public use).

The Group also directs us to a 1998 opinion of the Austin Court of Appeals which addresses the constitutionality of the Texas Legislature's alleged delegation of authority to a federal administrative agency. *See Ex parte Elliott*, 973 S.W.2d 737, 741 (Tex. App.—Austin 1998, pet. ref'd). *Elliott* is also distinguishable. In that case, although the court questioned the constitutionality of a state statute that attempted to adopt future laws, rules, or regulations of the federal government, it nevertheless side-stepped the question by concluding that the Texas Solid Waste Disposal Act's incorporation of the EPA's definition of "hazardous waste" in the federal Solid Waste Disposal Act was not a delegation of authority in violation of the Texas Constitution's separation of powers clause, but rather an incorporation by reference. *Id.* at 742–43.

Neither the Group nor the City has directed us to—and we have not found— any cases addressing the constitutionality of a home-rule city's ordinance that expressly incorporates state agency rules, as they currently exist, and as they may

be amended in the future. The Court of Criminal Appeals, however, has already upheld the Legislature's delegation of air-quality rulemaking and enforcement authority to TCEQ. *See State v. Rhine*, 297 S.W.3d 301, 312–13 (Tex. Crim. App. 2008) (concluding that state legislature's delegation of air-quality rulemaking and enforcement authority to TCEQ, an executive agency, did not violate non-delegation doctrine). TCEQ adopts rules (which are codified in Title 30 of the Administrative Code) in order to implement those powers and duties delegated to it by the Legislature. Here, the City is incorporating the air-pollution rules promulgated pursuant to that lawful delegation, as amended, to ensure that the Ordinance is consistent with state law on an ongoing basis. Otherwise, the city council would have to amend the Ordinance each time a relevant portion of the Administrative Code was amended, in order to maintain the consistency required by the TCAA.

We conclude that the Group failed to show that the Legislature intended to preempt the Ordinance with "unmistakable clarity," and thus, failed to meet its extraordinary burden to establish that the ordinance is invalid. *See Turtle Rock Corp.*, 680 S.W.2d at 805; *Comeau*, 633 S.W.2d at 792–93. We affirm the City's sole issue.

**IV. Conclusion**

We reverse the trial court's judgment and render judgment in favor of the City.

Jim Sharp
Justice

Panel consists of Justices Jennings, Higley, and Sharp.